Craig E Kleffman v. Vonage Holdings Corp et al							Doc. 2

LINK: 14

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6
ENTER
P-SEND

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
|---|---|---|---|
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Present: The Honorable **GARY ALLEN FEESS**

| Marilynn Morris | None | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:		Attorneys Present for Defendants:

None						None

**Proceedings:**     (In Chambers)

ENTERED
CLERK, U S DISTRICT COURT
MAY 23 2007
CENTRAL DISTRICT OF CALIFORNIA
BY               DEPUTY

**ORDER GRANTING MOTION TO DISMISS**

**I. INTRODUCTION & BACKGROUND**

Plaintiff Craig Kleffman received eleven different emails, each of which clearly and unequivocally presented an advertisement for Vonage telephone service and hot links to Vonage's website. The advertisements contained differing headers, each with some variation on the words "GreatCallRates" in the subject line and each sent from a different domain name.

Kleffman contends that Vonage used the multiple domain names for the purpose of avoiding anti-spam mechanisms, and that the failure to identify Vonage in the domain name and to send mail from a single address constituted a misrepresentation. Specifically, he alleges that Vonage intended to mislead internet service providers that flag high volume senders and to make it more difficult for individual users to block unwanted emails. He contends that Vonage's tactic violates section 17529.5 of the California Business and Professions Code, which provides:

> It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:
> . . .
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

Kleffman also brings a claim for violation of the California Consumer Legal Remedies Act ("CRLA"), which creates a cause of action for consumers that suffer damage due to a misrepresentation of the source of goods or services. Cal. Civ. Code §§ 1770(a)(2)-(3), 1780(a). He also styled his Complaint as a putative class action.

Vonage properly removed the case from state court pursuant to the Class Action Fairness Act, and now moves to dismiss it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In general, Vonage contends that the section 17529.5 claim is preempted by the Federal "CAN-SPAM" Act, and that even if it were not preempted, the facts alleged do not state the claim because its emails contained only truthful information. Further, Vonage contends that Kleffman lacks standing to bring the CRLA claim because he is not a "consumer" within the meaning of the statute, as he does not allege that he acquired or sought to acquire Vonage's broadband phone services.

The Court agrees with Vonage. As to the section 17529.5 claim, Kleffman does not actually allege that the *content* of Vonage's email was false, misrepresented or forged, and indeed points to nothing misleading about any single given email. Moreover, while he might characterize an email as containing the implicit misrepresentation "I am not from the same source as the others," the Court concludes this is more than the plain language of the statute would bear. And even if the statute did create such an innovative cause of action, it would be preempted because, the Court concludes, the CAN-SPAM Act left states room only to extend *traditional* fraud and deception prohibitions into cyberspace.

Regarding the CRLA claim, Kleffman lacks standing to bring the claim because he is not a "consumer," as he did not seek Vonage's phone services and cannot claim the emails themselves constituted a service. Accordingly, the motion to dismiss both claims is **GRANTED**.

## II. DISCUSSION

### A. THE LEGAL STANDARD

A court may not dismiss a complaint for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Fed. R. Civ. P. 12(b)(6). The Court accepts all factual allegations in the complaint as true; it then construes those facts, and draws all reasonable inferences therefrom, "in the light most favorable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

B. ANALYSIS

### 1. First Cause of Action: Section 17529.5 Claim

As noted above, Kleffman claims Vonages messages constituted "commercial e-mail advertisement[s] . . . [that are] accompanied by falsified, misrepresented, or forged header information." Cal. Bus. & Prof. Code § 17529.5(a)(2). The headers are allegedly falsified because, though they literally and truthfully identify the sender, they are part of a mechanism to avoid anti-spam legislation and therefore imply that they originate from different sources. However, under the plain language of the statute, which requires that an email message contain a falsified, misrepresented or forged header, the claim fails. The failure to send mail from a single domain name that includes the word "Vonage" is simply not a misrepresentation in any ordinary sense of the word. Rather, these are simply Kleffman's theories as to what would be required in order for spam filters to work effectively. But if the legislature had intended to draft legislation requiring the adoption of procedures that would allow for the effective operation of spam filters, it surely could have said so in plain English. The Court cannot attribute that legislative purpose to Section 17529.5 on the basis of its broad prohibition against falsified or misrepresented headers.

Moreover, the Court declines Kleffman's invitation to rely on a post-adoption letter from the enactment's sponsor, which speculated that violations of section 17529.5 "could" include "[t]he use of multiple email addresses and/or domain names created for the sole purpose of bypassing spam-filters and blacklists." (Compl. Ex. A [Murray Letter].) California courts refuse to consider such letters when they are written after legislation is adopted. See Delany v. Superior Court, 50 Cal. 3d 785, 801 n.12 (Ct. App. 1990). Accordingly, left with only the statute's plain language, the Court holds it does not encompass Kleffman's theory.

And even if it did, the statute would be preempted by the federal CAN-SPAM Act. Though a federal statute supersedes state law only where that is the "clear and manifest purpose of Congress," Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996), the purpose of Congress is the "touchstone" in every preemption case and the courts are to construe statutory language not in a narrow or restrictive sense but with the objective of seeking a fair understanding of Congress's purpose in light of the structure and purpose of the statute as a whole. Id. at 485-86.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

Here, Congress plainly intended to preempt state laws purporting to regulate certain aspects of electronic mail communications. In addition to creating a limited federal cause of action for materially false emails, 15 U.S.C. § 7704(a), the CAN-SPAM Act expressly:

> supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto*.

Id. § 7707(b)(1) (emphasis added). Though Congress did not define the terms "falsity" or "deception," it is clear that it meant these terms to refer to traditional, tort-type concepts and not to innovative theories such as Kleffman's. First, Congress's legislative findings indicate a reluctance to force "law-abiding" businesses to conform to a patchwork of state laws. See 15 U.S.C. § 7701(a)(11). The concern is stated even more clearly in the Senate Committee Report:

> [A] State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted. . . . [I]n contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply. Statutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway.

S. Rep. No. 108-102, at 21-22. In short, Congress intended that legitimate businesses would not have to guess at the meaning of various state laws when their advertising campaigns ventured into cyberspace. It thus left states room only to extend their *traditional* fraud prohibitions to the realm of commercial emails because it was confident that legitimate businesses would not unwittingly transgress such well-established prohibitions.

Viewed in this light, Kleffman's claims are clearly preempted. He does not allege a traditional tort theory at all, or even that he was at any point mislead by any of the eleven Vonage emails. Cf. Manderville v. PCG & S Group, Inc., 146 Cal. App. 4th 1486, 1498 & n.4 (Ct. App. 2007) (listing elements of fraud and deceit under California law). Indeed, the claim that the failure to include Vonage's name in the email is clearly preempted, as it would amount

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
|---|---|---|---|
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

to a "State law requiring some or all commercial e-mail to . . . contain specified content." S. Rep. No. 108-102, at 21-22. And the complaints as to Vonage's multiple domain names simply have no analogue outside the virtual world, because spam filters are a uniquely internet-based concept. Thus, these claims fall squarely into the realm of regulation that Congress intended to preempt.[1]

### 2. Second Cause of Action: Consumers Legal Remedies Act Claim

The second cause of action fails quickly because only a "consumer" may bring CRLA claims. Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285, 1303 (S.D. Cal. 2003); Cal. Civ. Code § 1780(a). "'Consumer' means an individual who seeks or acquires by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code § 1761(d). It is not enough that the plaintiff is a consumer of just *any* goods or services; rather, the plaintiff must have acquired or attempted to acquire the goods or services in the transaction at issue. See Schauer v. Mandarin Gems of Cal., Inc., 125 Cal. App. 4th 949, 960 (Ct. App. 2005).

Here, Kleffman is not a "consumer" because he specifically alleges that he and the class members have not acquired or sought any products or services offered by Vonage. (Compl. ¶ 57.) Moreover, the emails clearly are not goods, and Kleffman offers only a conclusory argument that they constituted a "service." "Service" means "[t]he act of doing something useful for a person or company for a fee." Black's Law Dictionary at 1372 (2004 ed.). This excludes spam emails, which are essentially advertisements for which the recipient pays no fee. See also Cal. Bus. & Prof. Code § 17500 (distinguishing between advertisements and services). Therefore, the Court holds he lacks standing and cannot state a CRLA claim.

---

[1] Vonage overrelies on Omega World Travel, Inc. v. Mummagraphics, Inc., 469 F.3d 348 (4th Cir. 2006), which stands for the simple and separate propositions that (1) the CAN-SPAM preemption clause does not allow states to create strict liability for inaccuracies in commercial email; and (2) CAN-SPAM's federal right of action for misleading headers does not lie if the message text contains ways to identify the sender. Id. at 355-56, 358. The case is distinguishable because there, the claimant apparently did not allege that the discrepancy in the defendant's email addresses had any effect whatsoever, thus leading the court to regard the claim as one for "immaterial error." See id. at 351. Kleffman's authorities are equally unpersuasive, as they merely compared the language of the statutes at issue to the savings clause, as opposed to examining the nature of the plaintiffs' theory of liability. See Gordon v. Impulse Mktg. Group, 375 F. Supp. 2d 1040, 1045-46 (E.D. Wash. 2005); Beyond Sys. v. Keynetics, Inc., 422 F. Supp. 2d 523, 535 (D. Md. 2006). The Supreme Court has indicated that this method is improper. See Cippollone v. Liggett Group, 505 U.S. 504, 523-24 (1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 07-2406 GAF (JWJx) | Date | May 22, 2007 |
| Title | Kleffman v. Vonage Holdings Corp., et al. | | |

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED WITHOUT LEAVE TO AMEND** and the claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.